IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA      *

v.      *      Criminal No.  JKB-16-0259

MILTON PORTILLO-RODRIGUEZ      *

*******************************************************************

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO SUPPLEMENT COURT'S PROPOSED *VOIR DIRE* AND
FOR EXPANDED USE OF PEREMPTORY CHALLENGES**

*"I consider trial by jury as the only anchor ever yet imagined by man,
by which government can be held to the principles of its constitution."*
Thomas Jefferson, 1788.

## INTRODUCTION

American juries have come a long way from times when only males, only whites, and only landowners could serve.  But as events of the past few years have divided our country on issues of race, immigration, privilege, fairness, vaccines and even the legitimacy of our government, we must be especially careful about jury trials.  That care means protecting both the appearance of impartiality and actual impartiality.  If the jury system is tainted, so is the judicial system.   The public's eyes are on the courts to see how they will address these issues in this time of turmoil.

"The Evolving Science on Implicit Bias" recently published by The National Center for State Courts ("NCSC") and the State Justice Institute ("SJI"), highlighted how high the stakes are in this moment:

> The judiciary is regarded by the public as a legitimate authority largely because of the perception of independence and impartiality. That perception is under threat. During the past turbulent year, public trust in government declined across the globe. As public trust

1

declines, the ability of the judiciary to skillfully and effectively demonstrate the ideals of fairness and impartiality under law becomes ever more critical.

Found at: https://ncsc.contentdm.oclc.org/digital/collection/accessfair/id/911.[1]   The report also pointed out that many state courts have recently begun efforts "to identify and address unconscious bias, and facilitate the uncomfortable conversations that arise from the recognition of such bias." *Id.*

The requests in the motion to supplement the court's *voir dire* and to expand the use of peremptory challenges focus on two areas:

(1) Minimizing unconscious and conscious bias in the jury box and the courtroom; and

(2) Providing more information to the parties about prospective jurors so their challenges can be made knowingly and effectively.

I. **INFORMED CHALLENGES TO PROSPECTIVE JURORS ARE THE FOUNDATION OF AN IMPARTIAL JURY**

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States,* 561 U.S. 358, 130 S.Ct. 2896, 2912-13 (2010).  In order for a challenge for cause or a peremptory challenge to serve its purpose, it must be intelligently exercised. The parties, therefore, *must* have sufficient information from the potential jurors upon which to base their challenges.  *Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616, 618 (7th Cir. 1986).  Plainly stated, "[p]eremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir.), *cert. denied*, 434 U.S. 902 (1977).  *See also, United States v.*

---

[1] Attached as Exhibit 1.

*Corey*, 625 F.2d 704, 707 (5th Cir. 1980)("[t]his court has previously stressed that voir dire examination not conducted by counsel has little meaning").

### A. JURORS MUST UNDERSTAND WHAT CONSCIOUS BIAS AND UNCONSCIOUS BIAS ARE IN ORDER TO AVOID THEM

To effectuate the goals of *voir dire*, Mr. Portillo-Rodriguez requests that the court introduce and explain the concept of implicit or unconscious bias. Supreme Court Justice Kavanaugh, while a law student, raised this type of bias in a Note on the procedures needed to effectuate the holding of *Batson v. Kentucky*, 476 U.S. 79 (1986):

> Participation by the defense would also help guard against "outright prevarication," "[a] **prosecutor's own conscious or unconscious racism**," or **"[a] judge's own conscious or unconscious racism**."

Brett M. Kavanaugh, *Defense Presence and Participation: A Procedural Minimum for* Batson v. Kentucky *Hearings*, 99 YALE L.J. 187, 198 (1989)[2](quoting from Justice Marshall's concurrence, citations omitted; emphasis added). Justice Kavanaugh continued addressing the need for a strong procedure for *Batson*, writing:

> The problem with detection of racial discrimination in the jury selection process extends beyond discovering overt racism. Examples of subtle stereotyping and racism point out the need to require defense rebuttal of the prosecutions' reason, since arguably much racism and racial stereotyping is lodged in the subconscious and will stay there unless forced into the open.

*Id.* at 199 (footnotes omitted).

Not only was the problem of unconscious bias of great concern in 1986 (*Batson*) and 1989 (Justice Kavanaugh's note), but "the idea of a fair and impartial jury" has "remained elusive." ABA Criminal Justice Section, "*Achieving an Impartial Jury: Addressing Bias in Voir Dire and*

---

[2] Attached as Exhibit 2.

*Deliberations,*" p. 1.³  However, "Emerging social and neuroscience research offers a new and promising approach to achieve greater impartiality by focusing more on *implicit* bias than on *explicit* bias.  *Id.* (emphasis in original).

The American Bar Association project created a "toolbox" in conjunction with various ABA Sections and an advisory group of leaders from the social sciences, the legal academy, the ABA and the practicing bench and bar.  It includes resources for unconscious bias training, jury panel *voir dire*, jury instructions, courtroom checklists, and feedback from various test groups.  One significant finding stood out:

> If there is a common conclusion heard repeatedly throughout the pilots, presentations, and various interviews, and also supported by the research, it is that being mindful of one's own implicit associations and choosing more individualized consideration are important, both in deliberation and in *voir dire*.  The ability of the decision maker to de-categorize and steer clear of group stereotypes and associations, however it is achieved, will likely make for a more fair decision.

*Id*. at 14 (footnotes omitted).

### 1. Introducing the Concepts to the Jury

The NCSC's report, "The Evolving Science on Implicit Bias," offers a comprehensive explanation of the terms involved, along with an ironic parallel to the COVID-19 pandemic.

> The terms unconscious bias and implicit bias emerged from research in the psychological and brain sciences. In everyday vernacular, they serve as shorthand labels for the notion widely supported by research evidence that social discrimination is like a virus: It can be easily and rapidly "caught" by a person from the social environment. This infection triggers an immune response: It influences the person's thinking and behavior in that environment to reinforce existing patterns of social discrimination, often in ways the person does not fully appreciate or understand. Implicit bias both results from and reinforces different forms of inequality at multiple levels of society. Research on implicit biases addresses how they can arise in individual information processing, decision-making, and behavior in ways that reproduce, reinforce, and are reinforced by dynamics that are historical, cultural, institutional, and interpersonal in nature. A comprehensive and successful approach to implicit bias intervention must be one that considers the importance

---

³ Exhibit 3; found at:
https://www.americanbar.org/content/dam/aba/publications/criminaljustice/voirdire_toolchest.pdf

4

of this broader social context and addresses the full array of forces that contribute to observed inequities.

Ex. 1, NCSC report, "The Evolving Science on Implicit Bias," at i.

With information that unconscious bias is real, that most people are unaware of what it is, and that *it affects jury selection and jury deliberation*, we can turn to solutions.  A quick review of state courts shows that many are using unconscious bias jury instructions – or have proposed them: Arkansas, California, Connecticut, Illinois,[4] Massachusetts, Michigan, Minnesota,[5] Missouri, New Jersey,[6] New York,[7] Oregon,[8] Pennsylvania, Washington.  *See*, Ex. 6 - Comments on Proposed Jury Impartiality Initiatives to Dir. of Courts from Ass'n of Black Women Lawyers of New Jersey, and Garden State Bar Ass'n, March 12, 2021; also *see*, NCSC's report, "The Evolving Science on Implicit Bias," *supra*, (Ex. 1) and ABA Criminal Justice Section, "*Achieving an Impartial Jury: Addressing Bias in Voir Dire and Deliberations,*" *supra* (Ex. 3).

The federal courts using unconscious bias instructions include the U.S. District Court – Western Washington,[9] the 9th Circuit Model Criminal Jury Instructions covering Alaska, Arizona, California, Guam, Hawaii, Idaho, Montana, Nevada, Northern Mariana Islands, Oregon and Washington,[10] the U.S. District Court – Iowa,[11] and the U.S. District Court – South Carolina.[12]

To account for the U.S. Supreme Court decision in *Peña-Rodriguez v. Colorado*, 580 U.S. ___, 137 S. Ct. 855 (2017), the Ninth Circuit Jury Instructions Committee updated its Model Rules

---

[4] See Exhibit 4 - IL
[5] See Exhibit 5 - MN
[6] See Exhibit 6 - NJ
[7] See Exhibit 7 - NY
[8] See Exhibit 8 - OR
[9] See Exhibit 9 - WDWA
[10] See Exhibit 10 – Excerpts of 9th Circuit Model Criminal Jury Instructions
[11] See Exhibit 11 – USDC-IA
[12] See Exhibit 12-- USDC-SC

in 2019 and 2020, stating:

> The Supreme Court emphasized the importance of jury instructions as a bulwark against bias in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 871 (2017). Accordingly, the Committee has incorporated stronger language regarding the jury's duty to act fairly and impartially into [Instruction 1.1 (Duty of Juror)], Instruction 1.7 (Credibility of Witnesses), Instruction 3.1 (Duties of Jury to Find Facts and Follow Law), and Instruction 7.1 (Duty to Deliberate).

Ex. 10, p. 1

In the civil context, the Fourth Circuit Court of Appeals in *Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017), recognized that "even well-intentioned people unknowingly act on racist attitudes" and held that adverse employment decisions based on implicit bias may constitute intentional discrimination. *Id.* at 641, 651–52.

### 2. Proposed Video to be Shown to Jury Panel

Mr. Portillo-Rodriguez requests that the Court allow the prospective jury panel to view the entire nine-minute video from U.S. District Court of Western Washington regarding unconscious bias (called implicit bias in the video). It is an ideal introduction to the topic especially for those jurors who are more visual learners than auditory learners. It can be found at https://www.wawd.uscourts.gov/jury/unconscious-bias and has been in use for all civil and criminal jury selections in that District since March 2017.[13]

### 3. Proposed Instructions on Unconscious Bias to Panel

Mr. Portillo-Rodriguez requests that the Court insert the following language before asking the jurors to complete the questionnaire:

As jurors it is important that you listen and decide the case ***impartially***. This means that

---

[13] Counsel received written permission on September 29, 2021, from Mr. Patrick Sherwood, Deputy in Charge, Western District of Washington, to use the video for purposes of this motion and jury presentation.

bias regarding a person's race, color, religious beliefs, national origin, sexual orientation, gender identity, gender, employment status, disability, etc., should play no part in how you make decisions in the trial. Accordingly, during this *voir dire* and jury selection process, I will ask questions related to the issues of bias and unconscious bias.

Every one of us makes implicit or unconscious associations and assumptions and has biases of which we are not consciously aware. I do it; you do it; everyone we know does it. This unconscious thinking includes biases we have; it affects what we see and hear, how we remember what we see and hear, and how we make decisions. But, as jurors, you have an obligation to judge the facts and apply the laws as I instruct you, *without* bias, prejudice or partiality.

To do this, *you will need to try to be aware of your own unconscious biases* so that you can set them aside during the trial and deliberations. As you answer these questions I am about to ask, please think about whether you may have pre-conceived ideas about what the "best" or the "right" answer is. That's not the answer I want. I want you to try hard to be completely open about your beliefs and thoughts. For our jury system to work fairly, we all have to work hard even when it may feel uncomfortable.

### 4. Proposed Preliminary Jury Instructions on Unconscious Bias

Mr. Portillo-Rodriguez requests that the Court include the following language on page four of the Court's Preliminary Jury Instructions to the selected jurors (immediately before the words 'In determining whether a witness should be believed" near the bottom of the page):

As jurors, your oath requires that you not be affected or influenced by any personal likes or dislikes, opinions, prejudices, sympathy or biases, including implicit or unconscious bias, as we've discussed.

We also discussed that we can only correct for hidden biases when we recognize them and how they can affect us. For this reason, you are encouraged to thoroughly and carefully examine your decision-making process to ensure that the conclusions you draw are a fair reflection of the law and the evidence. You may want to reexamine your reasoning for any possible bias by reconsidering your first impressions of the people and evidence in this case.

### 5. Proposed Unconscious Bias Changes to Pre-Deliberation Jury Instructions

In addition to the Court's standard jury instruction regarding a juror's duty to deliberate, Mr. Portillo-Rodriguez requests the following addition:

Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religious

beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.

Manual Of Model Criminal Jury Instructions for The District Courts of the Ninth Circuit, 2010 Ed., Updated 6/2021, 7.1 Duty to Deliberate (Ex. 10).

In this trial, the four defendants are all Hispanic. The vast majority of civilian witnesses will be Hispanic as well. All of the defendants will be using interpreters throughout the trial. Their alleged gang is one known as being connected to Central America. It is highly likely that the potential jurors will suspect that the defendants have not entered the country legally, given their ages and the length of time they have apparently been in the country. For these reasons it is critically important to have "the uncomfortable conversations" about conscious and unconscious bias at several points in the selection and instruction process.

## II.   EXPANDED VOIR DIRE AND PEREMPTORY CHALLENGES ARE NECESSARY FOR THE PARTIES' INTELLIGENT EXERCISE OF THEIR CHALLENGES

Rule 24(a) of the Federal Rules of Criminal Procedure grants the court broad discretion in conducting *voir dire* examination, but it is not without limit. *United States v. Lancaster*, 96 F.3d 734 (4th Cir. 1996). It is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 301 (1931). While expanded peremptory challenges and unconscious bias language in *voir dire* may not always be essential to ensure such fairness, here they *are* essential to reach that goal. This trial is taking place in the midst of a racially-charged period in which unlawful immigrants are also a hot-button issue in the media. Layering a global pandemic on top of those issues presents a challenging setting for a fair trial, to say the least.

### A. TO EFFECTIVELY USE PEREMPTORY CHALLENGES, A DEFENDANT MUST HAVE A MEANINGFUL NUMBER AVAILABLE TO HIM AND A MEANINGFUL WAY TO APPLY THEM

#### 1. The Number Available in the Court's Plan is Disproportionately Small

What has been addressed so far is (a) how important an impartial jury is to the integrity of the court system; (b) how important peremptory challenges are in ensuring an impartial jury; and (c) how important informing the jury about unconscious bias is to exercising peremptories. In that context, whether layperson or lawyer, one wonders how the following system is fair:

- When death is a possible penalty, **each side gets 20** peremptory challenges.
- When one year is a possible penalty, **each side gets 3** peremptory challenges.
- When multiple mandatory life sentences are possible,[14] **each defendant gets 2.5 and the government gets 6** peremptory challenges.

Elsewhere, the federal courts recognize that the seriousness of Mr. Portillo-Rodriguez' charges entitles him to two attorneys for his defense. 18 U.S.C. §3005. One must even be specially qualified as "learned counsel." *Id*. In the Fourth Circuit the requirement for two counsel holds even if the government is no longer seeking the death penalty. *United States v. Boone*, 245 F.3d 352 (4th Cir. 2001). It seems anomalous that his peremptory challenges will be fewer than if he, alone, were facing a misdemeanor, and his 3 challenges would be the same number as the government.

#### 2. Sharing Peremptory Challenges Reduces Each Defendant's Ability to Select an Unbiased Jury

The concept of sharing strikes, provided in Fed. R. Crim. P. 24(b), might be reasonable if

---

[14] Mr. Portillo-Rodriguez is currently charged in the Seventh Superseding Indictment with Conspiracy to Participate in a Racketeering Enterprise, 18 U.S.C. §1962(d), (Count 1); Racketeering, 18 U.S.C. §1962(c), (Count 2); Conspiracy to Commit Murder in Aid of Racketeering, murder, attempted murder, and assault with a deadly weapon, all in aid of racketeering, under 18 U.S.C. §1959(a)(1), (a)(3), (a)(5) and 18 U.S.C. §2 (Counts 5, 6, 7, 12, 13, 14, and 15).

there were only two co-defendants, for example. Or, if more than two, the co-defendants had a joint defense. But here, where it will be every person for themselves at trial, it is particularly difficult for the four accused to "share" challenges. Each defendant has a reason at trial to try to reduce his role in any crimes and to increase the role of the other three. In addition, there are other factors that each defendant may be on the watch for, that are not important to the others, *e.g*., whether a juror lives near a certain area, or whether a juror has children the same age of the defendant. The requirement to share a very limited number of challenges, therefore, further dilutes the right of each defendant to intelligently exercise his peremptory challenges.

### 3. The Concept of Simultaneous Challenges is Unworkable and Unnecessary with Four Defendants

Requiring both sides to note their peremptory challenges simultaneously deprives each of their full complement of challenges. At that, it is also disproportionately harder on the defendants because of their reduced number of strikes. A defendant who uses two challenges that the government has used for the same people is done. He is left with 0.5 challenges to negotiate with all three co-defendants. At that point he has had no meaningful exercise of his challenges regardless of how thorough *voir dire* and instructions are. This is even more true when adverse defenses are being presented.

### B. INCREMENTAL RESTRICTIONS ON USE OF PEREMPTORY CHALLENGES LIMIT THE CHANCE OF A FAIR TRIAL

The dual purpose of *voir dire* is to provide enough information to exercise challenges for cause and enough information to exercise peremptory challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991); *United States v. Brown*, 799 F.2d 134, 135 (4th Cir. 1986). These challenges are intended to advance the goal of meeting the constitutional requirement of an impartial jury. Challenges for cause are limited in scope, permitting "rejection of jurors on narrowly-specified,

provable and legally cognizable bas[e]s of partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965). Peremptory challenges, on the other hand, can be exercised "without a reason stated, without inquiry, and without being subject to the court's control." S*wain*, 380 U.S. at 220. *But cf. Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny.

Because the scope of challenges for cause is narrow, the peremptory challenge is often the most important tool for a litigant in picking an impartial jury. As noted by the Supreme Court in *Swain*: "The *voir dire* in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories . . . . The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain*, 380 U.S. at 218-219. A system that "prevents or embarrasses the full, unrestricted exercise of that right of challenge must be condemned." *Pointer v. United States*, 151 U.S. 396, 408 (1894).

### C. EXPANDED *VOIR DIRE* AND PEREMPTORY CHALLENGES HELP THE PARTIES COMPLY WITH *BATSON V. KENTUCKY*

Complete and effective *voir dire* is a basic premise which underlines the rationale of *Batson* v. *Kentucky*, 479 U.S. 79 (1986), and its progeny -- in two respects. First, it eliminates the need to rely on generalizations and stereotypes about people. As the Supreme Court recognized in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419 (1994):

> If conducted properly, *voir dire* can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. **Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently.**

*Id.* at 1429 (emphasis added). The second way in which a complete and effective *voir dire* is necessary under *Batson* is that "the *voir dire* process aids litigants in their ability to articulate race-neutral explanations for their peremptory challenges." *J.E.B.*, 114 S.Ct. at 1429 n. 17. Whether a

11

litigant is trying to prove a *prima facie* case of discrimination or trying to rebut one, an in-depth and extensive *voir dire* is essential.  A party defending a peremptory challenge should have sufficient information to provide a neutral explanation that will survive a *Batson* challenge.

### D. EXPANDED *VOIR DIRE* AND USE OF PEREMPTORY CHALLENGES MINIMIZES RISK OF REVERSIBLE ERROR

A *voir dire* process that impairs a defendant's ability to exercise his challenges intelligently is grounds for reversal.  *United States v. Rucker*, 557 F.2d 1046, 1048 (4th Cir. 1977).  In fact, a court which insists on conducting all *voir dire* itself may create grounds for reversal. The Ninth Circuit noted in *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979):

> The trial judge [may] insist on conducting a *voir dire* examination, but if he does so, he must exercise a sound judicial discretion in the acceptance or rejection of supplemental questions proposed by counsel.  Discretion is not properly exercised if the questions are not reasonably sufficient to test the jury for bias or partiality.

*Id.* at 1297.  The court went on to reverse the defendant's conviction for the trial court's failure to conduct a *voir dire* that created "reasonable assurances that prejudice would be discovered if present."  *Id.* at 1298. [15]  Other reversals for insufficient *voir dire* have included a failure to ask about jurors' moral or religious beliefs about alcohol, *United States v. Ible*, 630 F.2d 389, 394-95

---

[15] Although attorney-conducted *voir dire* is not requested in this motion, counsel notes that an important part of *voir dire* is the questions or follow-up requested by attorneys for both sides. These questions are more likely to occur to an advocate than a judge for several reasons, including the fact that a judge "does not have the advocate's awareness that soon he will be making peremptory challenges based on inferences from what prospective jurors have said" and the fact that "the judge does not know the case of either party in detail, so that he cannot realize when responses have opened areas for further inquiry." Babcock, <u>Voir dire: Preserving "Its Wonderful Power"</u>, 27 Stan. L. Rev. 545, 549 (1975).  *See also*, *United States v. Ible,* 630 F.2d 389, 395 (5th Cir. 1980)(The "federal" practice of almost exclusive *voir dire* examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case).

(5th Cir. 1980), and a failure to ask jurors in an assault case whether they had ever been victim of crime involving a knife or gun, *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980).

### E. EXPANDED *VOIR DIRE* AND CHALLENGES WITH UNCONSCIOUS BIAS INSTRUCTIONS ARE COMPELLED BY THE CURRENT MISTRUST OF AMERICAN INSTITUTIONS

It has become clear over the past few years, that the problems of racism, anti-immigrant hatred, tremendous wealth disparity, and opposition to rule of law, are causing deep despair in American society. Many have decried the problems, especially racism, and vowed that it will get better, but true change has not come. For example, after George Floyd's killing Attorney General William P. Barr said the following:

> While the vast majority of police officers do their job bravely and righteously, it is undeniable that many African Americans lack confidence in the American criminal justice system. That must change. Our Constitution mandates equal protection of the laws, and nothing less is acceptable. As the nation's leading federal law-enforcement agency, the Department of Justice will do its part.

Attorney General William P. Barr's Remarks on Mr. George Floyd and Civil Unrest, Washington, DC, June 4, 2020, found at: https://www.justice.gov/opa/speech/attorney-general-william-p-barr-s-remarks-mr-george-floyd-and-civil-unrest.  His words are compelling, but ironically, he closed with this message:

> When I was Attorney General in 1992, violent riots broke out in Los Angeles following the acquittal of the police officers accused of beating Rodney King. Ultimately, the department at my direction filed federal civil rights charges against the officers. As President Bush assured the Nation at that time, "The violence will end. Justice will be served. Hope will return."

*Id.*

Hope has not returned. Today, the law, the rules, and the practice regarding the requests in this motion do not ***require*** expanded *voir dire*, increased peremptory challenges, or unconscious bias instructions. But that is what is called for. Not only must the Department of Justice do its part,

13

but the federal courts should lead the way with changes that will, as Attorney General Barr promised, restore "confidence in the American criminal justice system."

### III. CONCLUSION

In *Peña-Rodriguez v. Colorado*, 580 U.S. ____, 137 S.Ct. 855 (2017), the Supreme Court held that ethnic racism against a Mexican defendant during deliberations was egregious enough to warrant calling into question the validity of the verdict. Justice Kennedy reasoned that,

> [R]acial bias, a familiar and recurring evil [ ], if left unaddressed, would risk systemic injury to the administration of justice. This Court's decisions demonstrate that racial bias implicates unique historical, constitutional, and institutional concerns. . . . .
>
> It is the mark of a maturing legal system that it seeks to understand and to implement the lessons of history. The Court now seeks to strengthen the broader principle that society can and must move forward by achieving the thoughtful, rational dialogue at the foundation of both the jury system and the free society that sustains our Constitution.

For the foregoing reasons as well as others developed at a hearing on the matter, Mr. Portillo-Rodriguez moves that his Motion be granted.

Respectfully submitted,

_____/s/_____
Laura Kelsey Rhodes (#12703)
Laura Kelsey Rhodes LLC
200-A Monroe St. #305
Rockville, MD 20850
(301) 424-0094
LKR@LKRhodesLaw.com


_____/s/_____
Robert W. Biddle (#10761)
Nathans & Biddle LLP
120 East Baltimore Street, Suite 1800
Baltimore, Maryland 21202
(410) 783-0272
Biddle@NathansLaw.com

*Attorneys for Defendant,*
  *Milton Portillo-Rodriguez*

14

**POINTS AND AUTHORITIES**

*Peña-Rodriguez v. Colorado*, 580 U.S. ___, 137 S.Ct. 855 (2017)

*Skilling v. United States,* 561 U.S. 358, 130 S.Ct. 2896, 2912-13 (2010)

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419 (1994)

*Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991)

*Batson v. Kentucky*, 476 U.S. 79 (1986)

*Rosales-Lopez v. United States*, 451 U.S. 181, 188 (1981)

*Swain v. Alabama*, 380 U.S. 202, 220 (1965)

*Cuyler v. Sullivan*, 446 U.S. 335 (1980)

*Pointer v. United States*, 151 U.S. 396, 408 (1894)

*United States v. Jeffery*, 631 F.3d 669, 673 (4th Cir. 2011)

*United States v. Boone*, 245 F.3d 352 (4th Cir. 2001)

*United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir. 1996)

*United States v. Brown*, 799 F.2d 134, 135 (4th Cir. 1986)

*United States v. Ledee*, 549 F.2d 990, 993 (5th Cir.), *cert. denied*, 434 U.S. 902 (1977).

*United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980)

*United States v. Ible*, 630 F.2d 389, 394-95 (5th Cir. 1980)

*United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980)

*Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616, 618 (7th Cir. 1986)

*United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979)

Fed. R. Crim. P. 24(a) – Trial Jurors

Manual Of Model Criminal Jury Instructions for The District Courts of the Ninth Circuit, Prepared by the Ninth Circuit Jury Instructions Committee, 2010 Ed., Updated 6/2021, Excerpt: 7.1 Duty to Deliberate

U.S. District Court-WDWA, Video introducing prospective jurors to unconscious bias concept, https://www.wawd.uscourts.gov/jury/unconscious-bias

Brett M. Kavanaugh, *Defense Presence and Participation: A Procedural Minimum for* Batson v. Kentucky *Hearings*, 99 YALE L.J. 187, 198 (1989)

Babcock, *Voir Dire: Preserving "Its Wonderful Power",* 27 Stan. L. Rev. 545, 549 (1975)

ABA Criminal Justice Section, "*Achieving an Impartial Jury: Addressing Bias*

*in Voir Dire and Deliberations"*

The National Center for State Courts and the State Justice Institute, "The Evolving Science on Implicit Bias" March, 2021

Comments on Proposed Jury Impartiality Initiatives to Dir. of Courts from Ass'n of Black Women Lawyers of New Jersey, and Garden State Bar Ass'n, March 12, 2021

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of October, 2021, a copy of the foregoing motion was electronically delivered via ECM/CF to all counsel of record.

                                                /s/
                                    Laura Kelsey Rhodes, Esquire